(114 App. Div. 890.)

PAYNE et al. v. O'BRIEN, Secretary of State. PENDLETON v. SAME. SHERRILL et al. v. SAME.

(Supreme Court, Appellate Division, Third Department. August 30, 1906.)

1. STATES—APPORTIONMENT OF SENATE DISTRICTS—LEGISLATIVE DISCRETION.

    Const. 1894 divided New York into 50 senate districts, and article 3, § 4, provides for reapportionment by the Legislature every 10 years; the districts to contain, as nearly as may be, equal population, excluding aliens, and to consist of contiguous territory, and no county to be divided, except to make two or more districts wholly therein. *Held*, that the spirit of these provisions was not invaded by Laws 1906, p. 1032, c. 431, apportioning the districts, by the attaching of Richmond, an island county, to Queens, a noncontiguous county; the physical and geographical situation of Richmond, with relation to other counties and former legislative and constitutional apportionments, being such as to vest in the Legislature a sound discretion with respect to locating it in a district which discretion will not be disturbed by the courts, there being no showing of its abuse.

2. SAME—COMPACTNESS OF FORM.

    Laws 1906, p. 1032, c. 431, apportioning the senate districts of New York, does not violate Const. 1894, art. 3, § 4, requiring the districts to be in as compact form as possible, by joining Clinton, Essex, and Washington counties, forming a long, narrow district, since the counties are situated along the chief lines of travel and commerce extending through them, and are compact in their interests.

3. SAME—EQUALITY OF POPULATION.

    Laws 1906, p. 1032, c. 431, apportioning New York into senate districts, does not violate Const. 1894, art. 3, § 4, requiring the districts to contain as nearly as may be equal population, by not giving Westchester county, having a population of 202,650, two districts, where Monroe county, population 225,609, was given two; the exact ratio of apportionment being 141,259.

Appeal from Special Term, Albany County.

Applications by George E. Payne and another, by Walter Pendleton, and by William L. Sherrill and another, for writs of mandamus against John F. O'Brien, Secretary of State. From orders (101 N. Y. Supp. 367) denying the writs, applicants appeal. Affirmed.

Argued before SMITH, CHESTER, KELLOGG, and COCHRANE, JJ.

Edward B. Whitney and Robert Grier Monroe, for appellants Payne and Perley.

William Allaire Shortt and Eugene Lamb Richards, Jr., for appellant Pendleton.

Brown, Carlisle & McCartin, for appellants Sherrill and Smallwood.

Julius M. Myer, Atty. Gen., and James G. Graham, Deputy Atty. Gen. (Merten E. Lewis, of counsel), for respondent.

CHESTER, J. The relators in these several proceedings seek thereby to have the provisions of the act (chapter 431, p. 1032, of the Laws

of 1906) apportioning the state into senate districts, under the enumeration of 1905, declared unconstitutional, and have appealed from orders of the Special Term denying their respective applications for writs of mandamus against the Secretary of State requiring him to send out the election notices for the ensuing election as required by section 5 of the election law, under the apportionment made by the Constitution of 1894 instead of under that act. The several proceedings have been argued as one, and, although in some respects differing from each other, may be considered and decided together, as the attack upon the apportionment act is based upon practically the same reasons in each.

The Constitution of 1894 divided the state into 50 senate districts, and provided in section 4 of article 3 for an enumeration of the inhabitants of the state, to be taken under the direction of the Secretary of State, during the months of May and June in the year 1905, and in every tenth year thereafter. This section lays down the rules to be followed by the Legislature in reapportioning the state into senate districts. It provides that the senate districts—

"Shall be so altered by the Legislature at the first regular session after the return of every enumeration that each senate district shall contain as nearly as may be an equal number of inhabitants, excluding aliens, and be in as compact form as practicable, * * * and shall at all times consist of contiguous territory, and no county shall be divided in the formation of a senate district except to make two or more senate districts wholly in such county. * * * Counties, towns or blocks which, from their location, may be included in either of two districts shall be so placed as to make said districts most nearly equal in number of inhabitants, excluding aliens."

Various infractions of the Constitution are charged by the appellants against the apportionment act in question. The one most emphasized in the briefs and arguments of counsel has been the placing of the county of Richmond, with a citizen population of 66,441, with the county of Queens, with a citizen population of 179,746, to compose the Second senatorial district, having thereby a total citizen population of 246,187. It is said that Rev. St. (1st Ed.) part 1, c. 2, tit. 1, § 2, subd. 4, fixes the boundaries of Richmond county so that it is contiguous to no county in the state other than Kings county; that it is not contiguous to Queens county; and, therefore, that there has been a clear violation of the Constitution requiring senate districts to consist of contiguous territory. At first sight there seems to be much force in this contention, but this requirement has been in all the Constitutions of the state since 1822, and never since the Constitution of 1846 has the county of Richmond been assigned to a senate district in which it was contiguous in the sense of being in contact with the other portion of the district of which it constituted a part, with the possible exception of a short time when, under the legislative apportionment of 1892, it was attached to a part of Kings county to form the Sixth senate district. Laws 1892, p. 806, c. 397, § 1. By the Constitution of 1846 it was placed with Suffolk and Queens counties to constitute the First senate district. So, under the apportionment made by the last constitutional convention, it was placed with the county of Suffolk to constitute the First senate district. Under several legislative apportionments it has been placed with counties or parts of counties other than Kings to form a senate district, and under the legislative apportion-

ment of 1879 it was assigned to a portion of New York county to form a senate district. Laws 1879, p. 286, c. 208, § 1. There appears to have been but the one instance referred to when it was joined to a portion of Kings county to constitute a senate district. So that we have here, not only a construction by the Legislature, but by two constitutional conventions, which shows that they did not regard the requirement of contiguity in the Constitution as applying to Richmond county with the same force and in the same sense as it applies to the other counties in the state. This construction by the Legislature and the constitutional conventions covers a period of 60 years in the history of the state and is not only a reasonable, but apparently a necessary, one, as Richmond is an island county, standing by itself, having, therefore, no physical contact with any other county in the state, and it only has such a contact upon lands under navigable waters by reason alone of the statutory definition of the boundaries between Richmond and Kings counties above referred to.

There is a requirement in the present Constitution that no county shall be divided in the formation of a senate district, except to make two or more senate districts wholly in such county. This now stands in the way of a union of Richmond in a senate district with any portion of Kings or New York counties, each of which have and are entitled to several senate districts. It is insisted, therefore, by counsel representing Richmond county, that it is entitled to stand as a senate district by itself, although it falls far below in citizen inhabitants that of any other senate district in the state under the present apportionment, and has not half enough such inhabitants to bring it up to the ratio upon which such apportionment was based. Counsel representing other sections in attacking the apportionment have suggested various other dispositions of this county. They are, however, wholly at discord in placing it. It is suggested, upon the one hand, that it should have been united with Rockland county, and, on the other hand, with the new county of Nassau. But each of these other counties are much farther removed from Richmond than is Queens, and it would appear that none of the suggested changes would be any more free from this constitutional criticism than is the present arrangement. There are forceful reasons, too, why the Legislature could not lawfully permit Richmond county to stand alone as a senate district. The constitutional convention of 1894 deemed it wise to insert in that Constitution the provision that:

"No county shall have more than one-third of all the senators and no two counties, or the territory thereof as now organized, which are adjoining counties, or which are separated only by public waters, shall have more than one-half of all the senators." Const. art. 3, § 4.

With respect to this provision the address to the people, adopted by the convention, accompanying its submission, contains the following declaration of the purpose of the convention with respect thereto:

"Before another constitutional convention presents its work to the people, it is probable that the cities of New York and Brooklyn, or the greater city formed by their union, will contain a majority of the inhabitants of the state. If the present system continues, they will be able to elect the Governor, the state officers, a majority of the senate and a majority of the assembly. Both

by force of numbers and by the multiplied power of compact organization and cohesion among the representatives from a single county, responsible to a single local political organization, they will be able absolutely to control the government of the state. What will be the consequence of compelling the vast region extending from the city of New York to St. Lawrence and to Lake Erie, with its varied interests, sentiments, and opinions, not over well understood by the inhabitants of the city, to submit to such a domination? Would such an arrangement conduce to the permanent welfare of the state? Our opinion is that it would not; and that the provision which secures to the whole state outside of the city a bare half of one house of the Legislature, leaving to the city such control as its members may give over the other house and over the executive department, is a slender enough safeguard against so unfortunate a result. We believe the provision to be sound in principle that somewhere in every representative government there should be a recognition of variety of interest and extent of territory as well as of mere numbers united in interest and location. Such a departure from the rule of strict numerical representation is recognized by the Constitution of the United States in the organization of the Senate, by the Constitution of the state of Pennsylvania in limiting the representation which the city of Philadelphia may have in its senate to one-sixth of its members, and by the Constitution of the state of Maryland in limiting the representation which the city of Baltimore may have. Similar provisions have been adopted by the state of Ohio affecting Cincinnati and Cleveland, the state of Missouri affecting St. Louis, the state of Rhode Island affecting Providence, and by other states of the Union having large cities. It is the rule, rather than the exception, throughout the Union." Revised Record of Const. Conv. 1894, vol. 4, p. 1255.

Richmond, it is true, comprises a county by itself, but it is now a borough of the city of Greater New York, and with the clear declaration of the constitutional convention of its purpose to regard "extent of territory as well as of mere numbers united in interest and location" in making an apportionment and to prevent the domination by the then great cities of New York and Brooklyn of the rest of the state, it is not to be presumed that it intended to require the Legislature to constitute the county of Richmond into a single senate district, when its location was such that it was then likely soon to be taken as a portion of Greater New York and when its population was so much below that of any other senate district in the state. The constitutional convention of 1894 having joined Richmond with Suffolk county in a senate district, it cannot be reasonable to suppose that it construed the clause requiring districts to "consist of contiguous territory" to be one which should prohibit the Legislature from doing with respect to the county of Richmond what it had done itself, namely, join it in a senate district to an island county which it did not come in physical contact with. Its physical and geographical situation is such, with relation to other parts of the state in its neighborhood, that it rested with the Legislature, under the construction which the constitutional convention and the Legislature had made, to exercise a sound discretion with respect to the location of this county in a senate district, and unless that discretion has been abused it is not a proper subject for review by the courts. People ex rel. Carter v. Rice, 135 N. Y. 473, 31 N. E. 921, 16 L. R. A. 836.

While there is much excess of population over the ratio in the senate district with it joined to Queens, and while there would have been a less excess if it had been joined to Nassau and Suffolk, we are not prepared to say that the Legislature, with the difficulties which con-

fronted it and with the requirement of compactness, abused its discretion in placing it were it did, with a county only a little more than eight miles distant from it, both of which are in New York City, and having easy and frequent means of communication with each other.

Counsel have argued that the Carter Case, above cited, has been overruled by the Constitution of 1894. It was decided, it is true, before the adoption of that Constitution; but we are unable to find any change made in that instrument which has in any degree impaired the authority of that case with respect to the discretion resting in the Legislature in apportionment cases.

Many other reasons are urged against the validity of this apportionment, only a few of which need to be especially noticed, as most of them are answered by the statement that the acts criticised were clearly within the legislative discretion, which has not been shown to have been abused, and, therefore, not the proper subject of correction by the courts.

It is urged that the Thirtieth senate district, which is made up of the counties of Clinton, Essex, and Washington, does not conform to the constitutional requirement that the senate districts shall "be in as compact form as practicable." But compactness of territory alone is evidently not what is meant by the constitutional requirement. The counties in this district consist of contiguous territory, and they are situated along the chief lines of travel and commerce running through them, and are compact in interests as well as in means of intercommunication. It has been held in another jurisdiction that the requirement of compactness does not relate alone to the form or size of the territory composing the district. People v. Carlock, 198 Ill. 150, 65 N. E. 109; People v. Thomson, 155 Ill. 451, 40 N. E. 307. We think, therefore, there has been no breach of the constitutional requirement, with respect to this district, that it should be as compact in form as practicable.

It is also urged that the county of Westchester, with a citizen population of 202,650, should have been divided into two districts. Under the method of apportionment required by the Constitution to be followed by the Legislature, it had to find its first ratio for the apportionment by dividing the total number of inhabitants of the state, excluding aliens, by 50. The total citizen population of 7,062,988, being so divided, gave a ratio of 141,259. It is claimed by counsel for the respondent that in compliance with this provision the Legislature fixed the first 22 districts, which include the 8 districts of Kings county, the 12 districts of New York county, and the 2 districts composed of the remaining counties on Long Island and of Richmond. The three districts of Erie county were also so fixed. Of the remaining counties Monroe had the largest citizen population, viz., 225,609, and Westchester the next largest, viz., 202,650. Monroe county, therefore, had one full ratio and a major fraction over, greater than that of any other remaining county, and for that reason was fairly entitled to have two senatorial districts made in that county. Westchester county did not have sufficient population for two districts under the ratio. With this situation, it would have been manifestly improper to have given Westchester county two senators and Monroe county only one. If Westchester should be divided into two districts, it would require a change

in the entire apportionment scheme throughout a large portion of the state, and it does not appear that, by taking into consideration the requirements as to equality of population and contiguity and compactness of territory, any such scheme would be practicable or more beneficial to the state at large than the one which has been followed, or which would be less free from the criticisms now made. While Westchester county has a large surplus over the ratio, it does not appear to us that it has legal cause for complaint of the legislative action.

Considering the difficulties surrounding the Legislature in apportioning the state into senate districts, the conflicting interests involved, the constitutional requirements, and the necessity of procuring the requisite vote in the Legislature to secure the passage of the bill, we are not prepared to say that the act now under review is any more subject to legal criticism than other preceding apportionments, which either have not been attacked in the courts or have been sustained by them when attacked, nor that there has been such an abuse of legislative discretion in making it as justifies the intervention of the court.

We recognize the importance of the questions involved and regret the necessity which requires so hasty a decision of cases of such importance; but after giving them such consideration as we have been able to in the limited time at our command, and bearing in mind the well-settled rule that courts should not declare any act of the Legislature to be unconstitutional unless it is manifestly and unequivocally so, and the question is free from reasonable doubt, we have concluded that the orders in each case should be affirmed, and the writ refused on a question of law only, with costs. All concur.