STATE EX REL. HENRY S. BLINK v. JOHN F. COOKE AND OTHERS.[1]

July 5, 1935.

No. 30,334.

*Hayes Dansingburg,* County Attorney, and *Phillips & Sherwood,* for appellants (respondents below).

*Granger & Blethen,* for respondent (relator below).

LORING, JUSTICE.

The county commissioners of Olmsted county appeal from a judgment of the district court adjudging and decreeing that a peremptory writ of *mandamus* issue commanding them to redistrict the county by dividing it into five county commissioner districts, bounded by town, village, ward, or precinct lines, composed of contiguous territory and containing as nearly as practicable an equal population.

Cities in Minnesota are of four classes: First class, those having more than 50,000 inhabitants; second class, those having 20,000 and not more than 50,000 inhabitants; third class, those having more than 10,000 and not more than 20,000 inhabitants; fourth class, those having not more than 10,000 inhabitants. In 1930 the county of Olmsted, as shown by the federal census of that year, had a

[1]Reported in 262 N. W. 163.

population of 35,426. The city of Rochester, located within the county, is a city of the second class having a population of 20,621. The five commissioner districts at that time had the following population: First district, 14,502; second district, 6,119; third district, 5,269; fourth district, 4,537; fifth district, 4,999. The first two districts are within the city of Rochester. There being more than 30 per cent of the total population of the county in the first district, it was thought necessary to redistrict the county to comply with the provisions of 1 Mason Minn. St. 1927, § 651, which provided:

"* * * In all counties such districts shall be bounded by town, village, or ward lines, shall be composed of contiguous territory and contain as nearly as practicable an equal population. Counties may be redistricted by the county board after each state or federal census; and when it appears that after a state or federal census thirty per cent or more of the population of any county is contained in one district, such county shall be redistricted by its county board. * * *"

The county board, by resolution (in 1931), accordingly redistricted the county. The third, fourth, and fifth districts, located outside the city of Rochester, were not changed. As redistricted, the first district had a population of 9,561; the second district 10,986, the latter being more than 30 per cent of the population of the county. An action, started by this relator, resulted in judgment on October 4, 1932, declaring the resolution of the county board null and void. The board, however, failed to redistrict the county, and this proceeding was started, and on June 2, 1933, an alternative writ of *mandamus* issued out of the district court commanding the county commissioners to redistrict the county in the manner provided by law, or show cause why they had not done so. On June 14, 1933, the county board, by resolution, again divided the county into five commissioner districts, the two city districts having a population, respectively, of 9,707 and 10,914, the latter being over 30 per cent of the population of the county. This is the redistricting here involved.

L. 1933, c. 363 (effective April 21, 1933) amended § 651 by adding thereto:

"Provided however, that no city of the second class shall be in more than two commissioners' districts."

The validity of the board's resolution depends upon the constitutionality of that proviso. The trial court held that it was violative of art. 4, §§ 33 and 34, constitution of Minnesota, prohibiting class or special legislation. Those sections provide:

"§ 33. In all cases when a general law can be made applicable no special law shall be enacted; and whether a general law could have been made applicable in any case is hereby declared a judicial question, and as such shall be judicially determined without regard to any legislative assertion on that subject. The legislature shall pass no local or special law regulating the affairs of, * * * [enumerating various subjects]."

"§ 34. The legislature shall provide general laws for the transaction of any business that may be prohibited by section one of this amendment, and all such laws shall be uniform in their operation throughout the state."

Our decisions on the subject of special legislation are discussed and cited in 1 Dunnell, Minn. Dig. (2 ed. & Supps. 1932-1934) § 1679, et seq. The general principles are: "A classification of subjects for purposes of legislation must not be arbitrary. It must rest on a distinction which is real, and substantial, and not slight, or illusory."

There are three counties having within their borders a city of the second class. Their respective populations are as follows:

| | |
|---|---|
| Olmsted County | 35,426 |
| City of Rochester | 20,621 |
| Balance of County | 14,805 |
| Winona County | 35,144 |
| City of Winona | 20,850 |
| Balance of County | 14,294 |
| Stearns County | 62,121 |
| City of St. Cloud | 21,000 |
| Balance of County | 41,121 |

The second class cities of this state are in counties essentially rural in character, and in our opinion the legislature was justified in its classification of these counties for the purpose of preventing the urban population from dominating them and from governing the counties and possibly from expending county funds wholly or principally in the interest of the cities within their boundaries. Conditions are essentially different in counties containing cities of the first, third, or fourth classes. Cities of the first class must necessarily completely dominate their counties. There is no probability that cities of the third and fourth classes will do so.

As wisely said by the New York State Constitutional Convention of 1894 (Revised Record of Const. Conv. 1894, vol. 4, p. 1255) and quoted with approval by the appellate division of the supreme court of that state in Payne v. O'Brien, 114 App. Div. 890, 895, 101 N. Y. S. 858, 861:

"We believe the provision to be sound in principle, that somewhere in every representative government there should be a recognition of variety of interest and extent of territory as well as of mere numbers united in interest and location..

"Such a departure from the rule of strict numerical representation is recognized by the Constitution of the United States in the organization of the Senate, by the Constitution of the State of Pennsylvania in limiting the representation which the city of Philadelphia may have in its Senate to one-sixth of its members, and by the Constitution of the State of Maryland in limiting the representation which the city of Baltimore may have.

"Similar provisions have been adopted by the State of Ohio affecting Cincinnati and Cleveland, the State of Missouri affecting St. Louis, the State of Rhode Island affecting Providence, and by other states of the Union having large cities. It is the rule rather than the exception throughout the Union."

The case cited was reversed (188 N. Y. 185, 81 N. E. 124) on the ground that the act there under consideration violated the New York constitution in regard to representation, because, when all the provisions of that constitution were construed together in the light of

the constitutional history of the state, the legislature was left with a minimum of discretion and must apportion senatorial districts according to population.

No provision in our constitution requires apportionment of commissioner districts according to population. The legislature is left supreme in this field and with its discretion untrammeled by constitutional restraint. That there is such restraint in regard to legislative districts and not as to districts for election of commissioners is significant. In the absence of such a provision in regard to the government of counties, the language of the New York Constitutional Convention becomes applicable to the situation. If there is any ground for the classification we are not justified in inquiring into or upsetting the legislative discretion. This court is a part of the judicial, not the legislative, branch of the government, and the wisdom of the legislative act, as long as there is some reasonable basis for the exercise of discretion, is not for it to review. If there may be reasonable grounds for classification the legislature must be sustained. That body is all-powerful in its proper field except as restrained by the state or federal constitutions; and if it sees fit to regard other considerations than population in distributing the representation upon county boards where counties contain cities of the second class, it has a right to do so, and we see ample justification for the proviso here involved.

Judgment reversed.

HILTON, JUSTICE (dissenting).

Under the classification made by the 1933 amendment, approved by the majority opinion, a commissioner from a Rochester or Winona district, even at the 1930 population, would represent approximately 10,000 residents each, while in the districts outside the city therein each commissioner would represent a little less than 5,000, resulting in a resident outside of the city having a representation equal to two or more residents within the city. Between the federal census of 1920 and 1930 the population of Olmsted county appreciably increased. The increase was principally in the city of Rochester. If Rochester should continue to grow, as it doubt-

less will, and should double its present population, and the remainder of the county, as is altogether likely, not proportionately increase its population, the present inequality would be greatly aggravated and result in even grosser inequality. Since 1860 up until the passage of L. 1933, c. 363, equality in representation has controlled and been the general policy of the state legislature. That policy was adhered to in the enactment of the provision directing a redistricting of commissioner districts when 30 per cent or more of the population of a county was in one district. (L. 1917, c. 370.) In my opinion no valid reason appears for the departure from that long-established and manifestly just and equitable policy respecting representation in the election of county commissioners in a county having a city of the second class.

The suggestion that because "second class cities of this state are in counties essentially rural in character" the legislature "was justified in its classification of these counties for the purpose of preventing the urban population from dominating them and from governing the counties and possibly from expending county funds wholly or principally in the interest of the cities within their boundaries" does not appeal to me. If such diversity of interests really exists, the remedy offered by the 1933 amendment merely shifts the power of domination from one side to the other. The framers of our constitution foresaw and made provision for such a situation. Minn. Const. art. 11, § 2, provides:

"The legislature may organize any city into a separate county, when it has attained a population of twenty thousand inhabitants, without reference to geographical extent, when a majority of the electors of the county in which such city may be situated, voting thereon, shall be in favor of a separate organization."

As long as the electors of a county such as here considered choose to be governed by a common organization, they should, under our system of government, have equal representation as nearly as may be practicable in the selection of administrative officials.

As I view it, the classification created by the 1933 amendment is arbitrary and illusory and hence unconstitutional.

DEVANEY, CHIEF JUSTICE (dissenting).
I concur with the views expressed by Mr. Justice Hilton.